UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

JACKIE HANOVER A/K/A JACKIE JAXX and IVAN
HARRY A/K/A D'IVAN,

               *Plaintiffs,*

   -against-

ONE COMMUNICATIONS (GUYANA) Inc. and
TENNICIA DE FREITAS A/K/A NEKEITA,

             *Defendants.*
             .

24-CV-6637 (ARR) (RML)

**OPINION & ORDER**

       Plaintiffs, Jackie Hanover and Ivan Harry, are two musicians who own a copyright in the composition and recording of the song "Guyana." Defendant One Communications is a Guyanese corporation that, during a marketing event designed to celebrate its change of name, infringed upon plaintiffs' copyright by holding an unauthorized and unlicensed performance of plaintiffs' work. That marketing event was held in Guyana and broadcast over the internet to users worldwide.

       Plaintiffs have brought suit against defendants for copyright infringement, tortious interference with business relations, and unjust enrichment. First Amended Complaint ("FAC"), ECF No. 11.[1] One Communications now moves to dismiss the FAC for lack of personal jurisdiction, pursuant to Fed. R. Civ. P. 12(b)(2). For the reasons set forth below, I agree with One Communications that I lack personal jurisdiction, and GRANT its motion to dismiss without leave to amend.

**BACKGROUND**

---

[1] Plaintiffs amended their complaint on October 21, 2024, in response to One Communications' proposed motion to dismiss for lack of personal jurisdiction. *Id*. at 1.

## I.    Parties

Plaintiffs are two musicians, Jackie Hanover and Ivan Harry. Ms. Hanover resides in and is a citizen of Guyana. FAC ¶ 4. Mr. Harry is a citizen of the United States and Guyana, *id*. ¶ 6, and resides in Brooklyn, New York, Decl. of Ivan Harry ¶ 4, ECF No. 23-9.

Defendant Tennicia De Freitas is a musician who performs under the stage names Nekeita and Tennicia. FAC ¶ 27. Ms. De Freitas is a citizen and resident of Guyana. *Id.* ¶ 29.

Defendant One Communications, formerly Guyana Telephone and Telegraph Company ("GTT"), is a telecommunications company that is incorporated and headquartered in Guyana. *Id.* ¶ 8. According to the declaration of its Deputy CEO, Richard Stanton, all of One Communications' "approximately 500 employees are located in Guyana," and One Communications does not have any offices or own real estate in the United States. Decl. of Richard Stanton ¶¶ 3, 5, ECF 22-2. One Communications is not registered to do business in any jurisdiction other than Guyana, nor is it licensed to provide telecommunications services in New York or the United States. *Id*. ¶ 4. One Communications does not advertise its services on any United States television or radio network, nor does it do so in any print media with a significant circulation in the United States. *Id*. ¶ 12.

Plaintiffs allege that One Communications "provides . . . service[s] used by consumers within the United States." FAC ¶ 10. First, One Communications provides the "International Passport," which permits One Communications customers to access cellphone services (calls, texts, and internet) while located outside of Guyana. *Id*. at 11; Stanton Decl. ¶¶ 14–15. Those services, known as "roaming services," Stanton Decl. ¶ 15 are accomplished in the United States through One Communications' contracts with Verizon, FAC ¶ 23. One Communications' customers may continue to access cellphone services using Verizon's network and infrastructure.

Stanton Reply Decl. ¶¶ 6–8, ECF 24-1. Second, One Communications operates an "e-commerce" payment processing application named Mobile Money Guyana ("MMG"), which permits consumers to pay merchants. FAC ¶ 13. MMG is "available for download" to customers located within New York and the United States, through cellphone application providers that provide applications for download, such as the Apple App Store, Samsung Galaxy Store, and Google Play Store. *Id.* ¶ 14. Third, One Communications offers the eTopUp application, which permits its users to purchase cellphone services (calls, text, and internet) for cellphone accounts operated by One Communications. Hanover Decl. ¶ 21, ECF No. 23-11.[2]

Plaintiffs allege that, "[u]pon information and belief, a target market of One Communications is the large Guyanese and West Indian population in New York," and that the New York market is "as large as or larger than One Communications customer base in Guyana." FAC ¶¶ 21–22. According to plaintiffs, One Communications' primary source of revenue is derived from "premium rate services from the United States." *Id.* ¶ 25. In support of that contention, Plaintiffs have submitted One Communications' Wikipedia page, which states that One Communications primary source of revenue came from premium rate numbers dialed to phone-sex lines from the United States. Hanover Decl. Ex. F, ECF No. 23-17 (Wikipedia page, citing a newspaper article published in 1996 from *The Montreal Gazette*).

## II.    The Protected Work

In 1997, Mr. Harry wrote and produced the song "Oh Guyana," which he registered with the United States Copyright Office under registration number SR0000234738. *Id.* ¶ 36.

---

[2] One Communications contend that the TopUp and MMG applications are respectively owned and operated by an independent third-party and One Communications' wholly-owned subsidiary. Stanton Reply Decl. ¶¶ 14, 20. Plaintiffs contend that those services are provided directly by One Communications. FAC ¶ 13; Hanover Decl. ¶ 21.

In 2016, Ms. Hanover wrote and produced the song "Guyana" (the "Song"), which contained "some element" of Mr. Harry's song "Oh Guyana," with his express consent. *Id.* ¶¶ 40–41. Ms. Hanover and Mr. Harry agreed to be "joint owners" of the copyright for the Song, with Ms. Hanover owning 75% of the copyright and Mr. Harry owning 25% of the copyright. *Id.* ¶ 42. Plaintiffs registered the composition and recording of the Song with the American Society of Composers and with the United States Copyright Office. *Id.* ¶¶ 43–46.

### III.    The Infringing Conduct

On or about September 6, 2024, One Communications held a "rebranding ceremony" to celebrate its name-change from GTT to One Communications. *Id.* ¶ 49.[3] The rebranding event publicized the name-change only, it did not promote any particular product sold by One Communications. Stanton Reply. Decl. ¶ 5 (declaration of One Communications' Deputy CEO). One Communications hired Ms. De Freitas to perform plaintiffs' Song during the ceremony, and she performed that Song in front of a live audience in Georgetown, Guyana. FAC ¶¶ 51–52. One Communications broadcast the ceremony, including Ms. De Freitas' performance of the Song, over television and radio stations in Guyana. *Id.* ¶ 54. In addition, the performance was displayed over the internet on a third-party website (Facebook), and was accessed by viewers in the United States. *Id.* ¶ 54–57; Johnson Decl. at ¶ 16, ECF No. 23-1.

One Communications and Ms. De Freitas did not obtain permission or a license to use plaintiffs' Song. FAC ¶ 60. In addition, One Communications' use of plaintiffs' Song interfered with Ms. Hanover's "prospective business relationship" with E-Networks Inc., "a key rival of

---

[3] The name-change occurred sometime in September 2024. Stanton Decl. at ¶ 7. One Communications also publicized its new name through other marketing events that occurred in Guyana and on its website and social media pages. *Id*. at ¶ 8.

One Communications," to license Ms. Hanover's "music catalog that includes the Song Guyana." *Id.* ¶ 70.

## STANDARD OF REVIEW

On a motion to dismiss for lack of personal jurisdiction, the "plaintiff bears the burden of showing that the court has jurisdiction over the defendant." *In re Magnetic Audiotape Antitrust Litig.*, 334 F.3d 204, 206 (2d Cir. 2003). However, "the plaintiff need only make a prima facie showing" of personal jurisdiction, which can be demonstrated through "affidavits and supporting materials, containing an averment of facts that, if credited, would suffice to establish jurisdiction." *Whitaker v. Am. Telecasting, Inc.*, 261 F.3d 196, 208 (2d Cir. 2001) (quotation marks omitted and alterations adopted).

In deciding a motion to dismiss for lack of personal jurisdiction, I "may consider materials outside the pleadings, including affidavits and other written materials." *Jonas v. Est. of Leven*, 116 F. Supp. 3d 314, 323 (S.D.N.Y. 2015). The allegations in the complaint must be taken "as true to the extent they are uncontroverted by [the movant's] affidavits." *NuMSP, LLC v. St. Etienne*, 462 F. Supp. 3d 330, 341 (S.D.N.Y. 2020) (quotation marks omitted). The non-movant's prima facie showing "must include an averment of facts that, if credited by the ultimate trier of fact, would suffice to establish jurisdiction over the [movant]." *In re Terrorist Attacks on Sept. 11, 2001*, 714 F.3d 659, 673 (2d Cir. 2013) (quotation marks omitted). If the parties present conflicting affidavits, "all factual disputes are resolved in the plaintiff's favor." *Id*. However, I need not "draw argumentative inferences in the plaintiff's favor . . . [or] accept as true a legal conclusion couched as a factual allegation." *Id*. (quotation marks omitted).

## DISCUSSION

### I.    New York Statutes

Personal jurisdiction is generally governed by the law of the state in which the court sits and by the limits of due process. *Chloé v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158, 163–64 (2d Cir. 2010). That inquiry involves a two-part analysis. First, I must determine whether the long-arm statute of New York, the forum state, permits the exercise of personal jurisdiction. *Whitaker v. Am. Telecasting, Inc.*, 261 F.3d 196, 208 (2d Cir. 2001). "If the exercise of jurisdiction is appropriate under that statute, the court must decide whether such exercise comports with the requisites of due process." *Id*.

"The Supreme Court has recognized three distinct bases for exercising personal jurisdiction over an out-of-forum defendant in accordance with the dictates of due process: general jurisdiction, specific jurisdiction, and consent." *Fuld v. Palestine Liberation Org.*, 82 F.4th 74, 86 (2d Cir. 2023), *cert. granted*, 145 S. Ct. 610 (2024). General jurisdiction permits "a court to hear any and all claims against a defendant," whereas specific jurisdiction permits a court to hear claims "that arise out of or relate to the defendant's forum contacts." *Id*. at 86–87. Finally, a court may exercise authority over a defendant that "has validly consented to personal jurisdiction . . . even in the absence of general or specific jurisdiction." *Id*. at 88.

Plaintiffs contend that New York law permits personal jurisdiction over One Communications under all three bases, and that the exercise of such jurisdiction comports with due process. For the reasons set forth below, I disagree and conclude that New York law does not authorize personal jurisdiction.

### A.    General Personal Jurisdiction

"Because of the breadth of general jurisdiction under New York law, New York courts have referred to the due process limits of the U.S. Constitution to outline the contours of their general jurisdiction." *Saeed v. ASML US, LLC*, No. 24-CV-5176, 2024 WL 4635368, at *2

(S.D.N.Y. Oct. 30, 2024); *see also Aybar v. Aybar*, 37 N.Y.3d 274, 287, 289 (2021). Although general jurisdiction extends to "any and all claims brought against a defendant," a court "may exercise general jurisdiction only when a defendant is essentially at home in the State." *Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 592 U.S. 351, 358 (2021) (quotation marks omitted).

"[E]xcept in a truly 'exceptional' case, a corporate defendant may be treated as 'essentially at home' only where it is incorporated or maintains its principal place of business." *Brown v. Lockheed Martin Corp.*, 814 F.3d 619, 627 (2d Cir. 2016) (quoting *Daimler AG v. Bauman*, 571 U.S. 117, 139 n.19 (2014)). As plaintiffs' own complaint acknowledges, One Communications is incorporated and headquartered in Guyana. FAC ¶ 8. Although plaintiffs contend that One Communications presents the "exceptional case" in which I may exercise general jurisdiction notwithstanding the defendant's foreign domiciliary, I disagree. *Brown*, 814 F.3d at 627.

Plaintiffs' sole argument in support of that contention is that One Communications conducts significant business in New York and "directly sells" its products to customers in New York. Pl. Opp. at 13–15, 20, ECF No. 23.[4] Even assuming the truth of those allegations, "systematic and continuous" business activity is "extraordinarily unlikely to add up to an exceptional case" in which a corporation is found to be at home in a state where it is neither incorporated or maintains its principal place of business. *Brown*, 814 F.3d at 629 (2d Cir. 2016) (quotation marks omitted). For general jurisdiction over an out-of-state corporation to be proper, New York must essentially have been a "surrogate principal place of business." *Id.* Plaintiffs do

---

[4] More specifically, One Communications (1) partnered with New York companies to provide the "International Passport service" (roaming cellphone services) and (2) provided its payment applications to customers located within New York. FAC ¶¶ 10–15.

not allege or aver any facts that contradict One Communications' affidavit that it does not have any offices, employees, agents, or property in New York or elsewhere in the United States. Stanton Decl. ¶¶ 5–6.[5] Courts have rejected general jurisdiction even in cases where the defendant's contacts were far more substantial. *See*, *e.g.*, *Saeed*, 2024 WL 4635368, at *2 (finding allegations that defendant "does substantial business in New York . . . and has three large offices here" insufficient to establish general jurisdiction over defendant); *Al-Ahmed v. Twitter, Inc.*, 553 F. Supp. 3d 118, 125 (S.D.N.Y. 2021) (allegations that defendant's "second largest corporate headquarters" and "over ten percent of [its] employees" were located in New York insufficient to establish general jurisdiction over sister-state corporation).

Accordingly, One Communications is not subject to general jurisdiction in New York.

## B.     Consent

Plaintiffs further argue that, under the Supreme Court's decision in *Mallory v. Norfolk S. Ry. Co.*, 600 U.S. 122 (2023), One Communications is subject to personal jurisdiction because it "is doing business that requires it to have an agent for service of process in state," and has thereby "consent[ed] to" personal jurisdiction "in exchange for the benefit of doing business" in New York. Pl. Opp. at 8, 9. Plaintiffs' contention is meritless.

As a preliminary matter, *Mallory* did not address general jurisdiction. 600 U.S. at 138. Instead, it addressed personal jurisdiction by "express or implied consent." *Id*. Regardless,

---

[5] Although the FAC alleges that "One Communications uses Verizon as an agent . . . for its provision of telecommunication services in the United State," FAC ¶ 23, I need not credit a "legal conclusion couched as a factual allegation," *In re Terrorist Attacks on Sept. 11, 2001*, 714 F.3d at 673. Plaintiffs do not identify any facts indicating that Verizon "acted in New York for the benefit" of One Communications, or that One Communications exercised "some control over" Verizon. *Hau Yin To v. HSBC Holdings, PLC*, 700 F. App'x 66, 68 (2d Cir. 2017) (describing the facts needed "[t]o establish an agency relationship for jurisdictional purposes") (quotation marks omitted).

*Mallory* is wholly inapposite, as the Court's decision was limited to "the state law and facts before [it]." *Id*. at 136. Namely, Pennsylvania law provides that an out-of-state corporation "may not do business in this Commonwealth until it registers with" the state, and "is explicit" that such registration "shall permit state courts to exercise general personal jurisdiction over a registered foreign corporation." *Id*. at 134. The *Mallory* Court determined that such business registration statutes, which permit jurisdiction over the corporation "as a condition of doing business there," "comport with the Due Process Clause." *Id*. at 133. Thus, a defendant who registers in accordance with Pennsylvania's statute has consented to its jurisdiction. *Id*.

By contrast, New York law is unequivocally clear. As the New York Court of Appeals has determined, "*under . . . New York law,* a foreign corporation does not consent to general jurisdiction in [New York] merely by complying with the Business Corporation Law's registration provisions." *Aybar*, 37 N.Y.3d at 290 (emphasis added). Although New York could condition the transaction of business within its borders upon consent to general jurisdiction, it has elected not to do so. *Id*. (explaining that the lack of consent-by-registration "rests solely on New York law grounds" and does not implicate federal due process principles). Accordingly, One Communications has not consented to jurisdiction in New York.[6]

### C.    Specific Jurisdiction

Plaintiffs also contend that I may exercise specific jurisdiction over One Communications pursuant to two provisions of New York's long arm statute, N.Y.C.P.L.R § 302. Pl. Opp. At 18–

---

[6] In any event, One Communications has *not* registered to do business in New York, nor has it appointed an agent for service of process in New York. Stanton Decl. ¶ 5; Summons Executed, ECF No. 17 (declaring that One Communications was served at its "head office" in Guyana). Indeed, plaintiffs do not allege or aver that One Communications took either action. Plaintiffs merely argue that because One Communications "is doing business in New York," it was *required* to register for business and appoint an instate agent for service of process. Pl. Opp. at 9.

19. First, plaintiffs assert that One Communications is subject to § 302(a)(1), which permits jurisdiction over a non-domiciliary that "transacts any business within the state or contracts anywhere to supply goods or services in the state." Second, plaintiffs assert that One Communications is subject to § 302(a)(3)(ii), which permits jurisdiction over a non-domiciliary that "commits a tortious act without the state causing injury to person or property within the state . . ., if he . . . expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce."

      **1.**      **§ 302(a)(1)**

Under N.Y.C.P.L.R. § 302(a)(1), "a court must decide (1) whether the defendant 'transacts any business' in New York and, if so, (2) whether this cause of action 'aris[es] from' such a business transaction." *Best Van Lines, Inc. v. Walker*, 490 F.3d 239, 246 (2d Cir. 2007).

Plaintiffs assert that One Communications' rebranding event itself constitutes a "transaction of business" in New York under § 302(a)(1). Pl. Opp. at 18–19. I fail to see how that is the case. The infringement occurred in Guyana, by a Guyanese singer (Ms. De Freitas), under contract with a Guyanese company (One Communications). Although internet users located in New York may have viewed One Communications' broadcast of the performance over Facebook, "the mere availability of the site to users in New York, standing alone, does not amount to transacting business in the state for purposes of section 302(a)." *Megna v. Biocomp Lab'ys Inc.*, 166 F. Supp. 3d 493, 498 (S.D.N.Y. 2016). The complaint does not allege, nor is there any evidence that, One Communications "transact[ed] business" with New York residents through the broadcast. Viewers were not charged a fee to watch the broadcast, nor did One Communications sell any products to New York residents through the broadcast. *Freeplay Music, Inc. v. Cox Radio, Inc.*, 2005 WL 1500896, at *7 (S.D.N.Y. June 23, 2005) ("It stretches the

meaning of 'transacting business' too far to subject defendants to personal jurisdiction . . . merely for operating a website . . . without some evidence or allegation that commercial activity in that state actually occurred or was actively sought."). Simply put, jurisdiction requires more than plaintiffs' bare allegation that New York residents viewed the infringing performance. *See Capitol Recs., LLC v. VideoEgg, Inc.*, 611 F. Supp. 2d 349, 359–60 (S.D.N.Y. 2009) (concluding that "[t]he 'sheer availability' of allegedly infringing video files on [defendant's] website" was "insufficient to support jurisdiction under Section 302(a)(1)," where "videos were available free of charge and irrespective of the viewer's locale"); *Virgin Enterprises Ltd. v. Virgin Eyes LAC*, No. 08-CV-8564, 2009 WL 3241529, at *4 (S.D.N.Y. Sept. 30, 2009) ("The mere fact that the website was available for anyone (specifically, a New York resident) to view, is insufficient to sustain jurisdiction." (quotation marks omitted)).

Plaintiffs also assert that One Communications "transact[s] business" in New York due to (1) its operation of a payment processing application, Mobile Money Guyana, that is available to and heavily used by New York residents and (2) its operation of the "International Passport service," which provides cellphone connectivity to One Communications customers located in New York pursuant to a contract with Verizon. Pl. Opp. at 18; *see also* FAC at ¶¶ 23–24 (alleging that Verizon was One Communications' "agent and or facilitator for its provision of telecommunication services in the United States," and that Verizon is located within New York). However, even assuming the truth of those allegations and that they sufficiently establish that One Communications "has transacted business," plaintiffs fail to identify an "articulable nexus . . . between the claim[s] asserted" and those business transactions. *Megna*, 166 F. Supp. 3d at 497.

To satisfy the nexus prong of N.Y.C.P.L.R. § 302(a)(1), "the claim asserted must arise from th[e] business activity, . . . so that there is a direct relation between the cause of action and the in-state [business] conduct." *Edwardo v. Roman Cath. Bishop of Providence*, 66 F.4th 69, 76 (2d Cir. 2023) (quotation marks and citation omitted). Although plaintiffs contend that "the rebranding event pertains to . . . the various services and products [One Communications] provides in New York," Pl. Opp. at 18–19, plaintiffs' complaints and affidavits do not support that conclusory assertion. Plaintiffs' claims are based on a single event that occurred in Guyana—the performance and broadcast of plaintiffs' song—which celebrated One Communications' name change from GTT. FAC at ¶ 49. Notably, plaintiffs do not provide any facts which suggest that the ceremony and its broadcast (a) promoted products purportedly available to or used by New York customers, (b) were specifically directed at promoting One Communications or its products to New York consumers, or (c) had any relationship to One Communications' roaming agreements with Verizon.[7] In essence, plaintiffs rest on the untenable premise that, because One Communications infringed upon plaintiffs' song during a rebranding event, plaintiffs' infringement claims arise from or relate to any and all business transactions undertaken by One Communications. New York's long-arm nexus requirement demands more than such a "tangential relationship." *Solé Resort, S.A. de C.V. v. Allure Resorts Mgmt., LLC*, 450 F.3d 100, 104 (2d Cir. 2006).

In conclusion, plaintiffs "make[] no claim that any of the infringing materials were copied or uploaded in New York, that the infringement was directed or committed by any of

---

[7] The declaration of One Communications' Deputy CEO states that the ceremony was designed "only to celebrate and publicize [One Communications'] new name" and made no mention of the services that plaintiffs contend are accessible by New York customers. Stanton Reply Decl. ¶ 5. Plaintiffs do not provide any allegations or evidence that contradicts those statements.

defendant's New York personnel, or that the claim arose out of any of the . . . business activities that defendant conducted in New York." *Creative Photographers, Inc. v. Grupo Televisa, S.A.B.* ("*Creative I*"), No. 23-CV-7106, 2024 WL 1533189, at *9 (S.D.N.Y. Apr. 8, 2024) (quotation marks omitted). Plaintiffs have therefore failed to make a prima facie case of personal jurisdiction under § 302(a)(1). *Id.*

### 2. § 302(a)(3)(ii)

To establish jurisdiction under N.Y.C.P.L.R. § 302(a)(3), the alleged tortious conduct must have "caus[ed] injury within [New York]." Here, One Communications allegedly caused "the unauthorized performance" of plaintiffs' copyrighted song during a corporate rebranding event in Guyana that was also broadcast on internet platforms in the United States. FAC ¶¶ 52, 54. Plaintiffs assert that the "location of injury [for] a copyright infring[ement]" that "occurs via the internet is the residence or place of business of the copyright owner." Pl. Opp. at 19. Thus, according to plaintiffs, § 302(a)(3)'s locus of injury requirement is satisfied because (1) Mr. Harry resides in New York; and (2) plaintiffs' agents for licensing performance and broadcast rights (ASCAP and plaintiff's manager, Ian Johnson) each maintain their principal place of business in New York. Pl. Opp. at 20.

However, it is well-settled that "residence or domicile of the injured party within [New York] is not a sufficient predicate for jurisdiction" under section 302(a)(3). *Fantis Foods, Inc. v. Standard Importing Co.*, 49 N.Y.2d 317, 326 (1980). Thus, the Second Circuit has repeatedly "rejected as insufficient . . . allegations of remote or consequential injuries such as lost commercial profits which occur in New York only because the plaintiff is domiciled or doing business here." *Troma Ent., Inc. v. Centennial Pictures Inc.*, 729 F.3d 215, 218 (2d Cir. 2013) (quotation marks omitted).

Although the New York Court of Appeals has concluded that, in "copyright infringement cases involving the uploading of copyrighted printed literary work onto the Internet," "the situs of injury" is "the residence or location of the principal place of business of the copyright holder," the court was careful to cabin its holding to the circumstances before it. *Penguin Grp. (USA) Inc. v. Am. Buddha*, 16 N.Y.3d 295, 301–02 (2011). Because the injury occasioned by uploading is so widely dispersed, and the place of uploading largely "inconsequential," "the out-of-state location of the infringing conduct"—the other possible situs of injury—"carries less weight in the jurisdictional inquiry." *Id.* at 305. As the Second Circuit has explained, *Penguin* demands "allegations of a form of infringement that works an injury that is virtually impossible to localize," absent which the "place where the plaintiff's business is lost or threatened exerts a significant gravitational influence on the jurisdictional analysis." *Troma*, 729 F.3d at 220 (quotation marks omitted). Accordingly, courts in this circuit have narrowly cabined *Penguin* "as controlling only in digital piracy cases." *Morningstar Films, LLC v. Nasso*, 554 F. Supp. 3d 525, 535 (E.D.N.Y. 2021) (collecting cases); *Freeplay Music, LLC v. Dave Arbogast Buick-GMC, Inc.*, No. 16-CV-442, 2017 WL 449913, at *5–7 (S.D.N.Y. Jan. 18, 2017) (noting that the "type of 'digital piracy' at issue in *Penguin*" is limited to cases in which the "defendant uploaded the copyrighted material so that third parties could download unlicensed versions," and that such digital piracy is distinguishable from cases in which the defendant used unlicensed music in their online advertising).

Here, plaintiffs allege that One Communications (1) failed to license their music for a performance held in Guyana by a Guyanese company and (2) interfered with plaintiffs' potential licensing relationship with one of One Communications' rival corporations, E-Networks Inc.,

which is assumedly also located in Guyana. FAC ¶¶ 64–74.[8] It is clear that the locus of the tortious conduct was "discrete" and "geographically circumscribed" to Guyana, regardless of the fact that One Communications distributed the live performance to viewers across the internet. *Troma*, 729 F.3d at 220. In order to assert personal jurisdiction, plaintiffs must therefore "allege facts demonstrating a non-speculative and direct New York-based injury to [their] intellectual property rights," harming their "continuing value." *Id.*

Plaintiffs' assertion that Mr. Harry and their agents are located in New York does not establish a New York-based injury, as "mere economic injury within the state" or "simple economic losses that [plaintiffs'] New York-based business suffered" are insufficient to satisfy § 302(a)(3). *Troma*, 729 F.3d at 218, 220–21 (noting that a plaintiff cannot rely upon "allegations of remote or consequential injuries such as lost commercial profits which occur in New York only because the plaintiff is domiciled or doing business here" (quotation marks omitted)). Instead, plaintiffs must allege that the harm was localized to New York—that they lost sales in the New York market or lost customers that are New York customers. *See JCorps Int'l, Inc. v. Charles & Lynn Schusterman Fam. Found.*, 828 F. App'x 740, 744 (2d Cir. 2020) (noting that a "New York-based injury means the loss of *New York-based customers* . . . or some other similar harm to in-state business" (emphasis added)); *Darby Trading Inc. v. Shell Int'l Trading & Shipping Co.*, 568 F. Supp. 2d 329, 336 (S.D.N.Y. 2008) ("While . . . lost sales or customers can satisfy the injury within New York requirement under Section 302(a)(3)(ii), those lost sales must be in the New York market, and those lost customers must be New York customers." (quotation marks omitted)).

---

[8] Plaintiffs provide no details about E-Networks' operations other than to describe it as a "key rival" of One Communications. FAC ¶ 70

Plaintiffs' conclusory assertions of harm to their intellectual property rights or lost profits are plainly insufficient. *See Morningstar Films*, 554 F. Supp. 3d at 536 (collecting cases); *see also JCorps Int'l*, 828 F. App'x at 744 (allegation that defendant lost New York customers insufficient where plaintiff did not "indicate how the [d]efendants' actions caused [plaintiff] to lose those New York-based [customers], who those [customers] were, when the harm occurred," etc.). Here, the only losses alleged by plaintiffs with any particularity are lost licensing arrangements with One Communications and E-Networks, Inc. However, plaintiffs cannot rely upon the loss of those licensing arrangements to establish injury in New York because both entities are Guyanese-based customers, not New York-based customers.

Similarly meritless is plaintiffs' argument that they were injured in New York because One Communications was "required to negotiate with and secure an agreement with Plaintiffs' agent and or manager in New York." Pl. Opp. at 23. Courts in this circuit have repeatedly found "allegations that a defendant uploaded a New York resident's copyrighted works to the internet without paying a licensing fee [does] not suffice to establish an in-state injury." *Creative Photographers, Inc. v. Grupo Televisa*, S.A.B. ("Creative II"), No. 23-CV-7106, 2025 WL 388401, at *12 (S.D.N.Y. Feb. 4, 2025) (collecting cases).

Accordingly, plaintiffs have failed to identify a sufficient basis for personal jurisdiction.[9]

## II.    FEDERAL STATUTES

Finally, plaintiffs assert that personal jurisdiction is proper under Fed. R. Civ. P. 4(k)(2), which permits personal jurisdiction over a foreign defendant where plaintiff establishes that "(1) the claim arises under federal law; (2) the defendant is not subject to jurisdiction in any state's

---

[9] As explained below, even assuming that C.P.L.R. § 302(a)(3)(ii) authorized jurisdiction based on a New York "injury," personal jurisdiction would not comport with due process under the circumstances here. *See*, *infra* Part II.

courts of general jurisdiction; and (3) the exercise of jurisdiction is consistent with the U.S. Constitution and laws." *George Moundreas & Co. SA v. Jinhai Intelligent Mfg. Co. Ltd.*, No. 20-CV-2626, 2021 WL 168930 at *11 (S.D.N.Y. Jan. 18, 2021). One Communications concedes that the first two elements are met, but that the exercise of jurisdiction would violate due process. Def. Mot. at 17, ECF No. 22-1.

Under the Rule 4(k)(2) analysis, I must first consider whether the defendant "has sufficient minimum contacts with the United States as a whole," and then determine whether the "assertion of personal jurisdiction is reasonable under the circumstances of the particular case." *George Moundreas*, 2021 WL 168930 at *11 (quotation marks omitted). Plaintiffs must either establish general jurisdiction—that the contacts sufficiently establish that the defendant is at home in the United States—or specific jurisdiction—that the "suit either arises out of, or is related to, [defendant's] contacts with the United States." *Porina v. Marward Shipping Co.*, 521 F.3d 122, 128 (2d Cir. 2008).

## A.    General Jurisdiction

One Communications is not "at home" in New York, or the United States generally. As demonstrated by the declaration of its Deputy CEO, One Communications is headquartered and incorporated in Guyana, and has no employees, office, or real estate in the United States. Stanton Decl. at ¶¶ 3–6. Accordingly, due process does not permit general jurisdiction over One Communications. *See Daimler*, 571 U.S. at 139, 141 (holding that due process requires the "foreign corporation's in-forum contacts" to be more than "continuous and systematic," they must be "so continuous and systematic as to render it essentially at home in the forum," and

directing courts to pay "heed to the risks to international comity" (quotation marks omitted and alterations adopted)).[10]

### B.    Specific Jurisdiction

Nor would specific jurisdiction be proper. Plaintiffs first assert that One Communications has extensive contacts with the United States due to One Communications provision of cellphone connectivity services (International Passport) and payment processing applications (Mobile Money Guyana) to customers located in the United States. Those contacts are the same "business transactions" under which plaintiffs attempt to premise jurisdiction under New York's long-arm statute. Due process imposes similar limitations, as specific jurisdiction requires the suit to "arise[] out of . . . defendant's contacts . . . with the forum," *Daimler*, 571 U.S. at 127, and a defendant "cannot be made to answer in this forum with respect to matters unrelated to the forum connections," *Waldman v. Palestine Liberation Org.*, 835 F.3d 317, 341 (2d Cir. 2016) (quotation marks omitted).

As discussed above, there is no articulable relationship between plaintiffs' copyright infringement claim and One Communications' provision of services to customers located in New York. Because plaintiffs merely allege that One Communications conducted similar transactions in the United States more broadly, there likewise is no relationship between One Communications' provision of those services and its infringement of plaintiffs' copyright. *See Charles Schwab Corp. v. Bank of Am. Corp.*, 883 F.3d 68, 84 (2d Cir. 2018) ("Courts typically require that the plaintiff show some sort of causal relationship between a defendant's U.S.

---

[10] The "due process analysis in the personal jurisdiction context is basically the same under both the Fifth and Fourteenth Amendments," and under either Amendment, general personal jurisdiction is proper only if the defendant is "essentially at home" in the forum. *Fuld v. Palestine Liberation Org.*, 82 F.4th 74, 81 (2d Cir. 2023) (quotation marks omitted), *cert. granted*, 145 S. Ct. 610 (2024).

contacts and the episode in suit."); *Walden v. Fiore*, 571 U.S. 277, 284 (2014) (noting that specific jurisdiction must be premised on the defendant's "suit-related conduct").

Second, plaintiffs again assert that the performance and broadcast themselves constitute contacts with the United States, as Mr. Harry resides in the United States and the Facebook broadcast was viewed by internet users located in the United States. Pl. Opp. at 19, 23. As plaintiffs acknowledge, "the conduct that forms the basis for the controversy"—the infringing performance and broadcast— "occur[ed] entirely out-of-forum" in Guyana. *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 732 F.3d 161, 173 (2d Cir. 2013); FAC ¶ 52. Accordingly, One Communications is subject to personal jurisdiction only if it "expressly aimed its conduct at the forum." *Id*.

Mr. Harry's residence in the United States does not confer jurisdiction, as "mere injury to a forum resident is not a sufficient connection to the forum." *Walden*, 571 U.S. at 290 ("The proper question is not where the plaintiff experienced a particular injury or effect but whether *the defendant's conduct* connects him to the forum in a meaningful way." (emphasis added)).

For similar reasons, plaintiffs cannot premise jurisdiction on the allegation that internet users in the United States viewed One Communications' broadcast of the infringing performance, as "that is precisely the sort of unilateral activity of a third party that cannot satisfy the requirement of contact with the forum." *Walden,* 571 U.S. at 291 (2014). Notably, plaintiffs have not alleged or offered any evidence that the broadcast "targeted American visitors," *Creative II*, 2025 WL 388401 at *14, or was "expressly aimed" at the United States, *Charles Schwab*, 883 F.3d at 87.[11] Plaintiff cannot simply allege that the United States has a large

---

[11] For example, plaintiffs offer statements related to the rebranding event that were published in a Guyanese Newspaper and in a Facebook post, in which One Communications' executives announce that One Communications "operate[s] in four markets in the region" and is "now a

Guyanese community from which One Communications derives significant business, FAC ¶¶ 21–23, as that fact does not indicate that One Communications targeted the broadcast to reach those United States customers specifically. As noted above, plaintiffs do not contest defendant's affidavits that the performance and broadcast did not mention the United States, New York, or any services that One Communications provides to customers in the United States. *See* Stanton Reply Decl. ¶ 5.

At bottom, plaintiffs allege merely that One Communications broadcast the infringing performance on Facebook to viewers located worldwide, and that some unknown number of viewers located in the United States viewed the broadcast. However, it is well-established that the "mere accessibility of the defendants' websites in the forum cannot by itself establish the necessary minimum contacts." *Triple Up Ltd. v. Youku Tudou Inc.*, 235 F. Supp. 3d 15, 23 (D.D.C. 2017) (quotation marks omitted and alterations adopted), *aff'd*, No. 17-7033, 2018 WL 4440459 (D.C. Cir. July 17, 2018). Accordingly, the broadcast did not create sufficient contacts with the United States.

### C.    Fair Play and Substantial Justice

Even assuming that there existed sufficient contacts between One Communications and the United States, One Communications has sufficiently met its burden of establishing that jurisdiction would offend "traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. State of Wash., Off. of Unemployment Comp. & Placement*, 326 U.S. 310, 316 (1945); see also *Chloé*, 616 F.3d at 165 (noting that the defendant bears the burden of demonstrating unreasonableness). That analysis requires me to consider "(1) the burden that the exercise of

---

regional brand." Hanover Decl. at ¶¶ 6–9. However, neither statement indicates that the rebranding event was targeted at the United States, or indeed, make any mention of the United States.

jurisdiction will impose on the defendant; (2) the interests of the forum [nation] in adjudicating the case; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the [international] judicial system's interest in obtaining the most efficient resolution of the controversy; and (5) the shared interest of the [nations] in furthering substantive social policies." *Metro. Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 568 (2d Cir. 1996).

First, "[t]here would, of course, be a substantial burden imposed on [One Communications]," *Kernan v. Kurz-Hastings, Inc.*, 175 F.3d 236, 244 (2d Cir. 1999), as it is headquartered in Guyana and has no employees in the United States, Stanton Decl. ¶¶ 5–6. Accordingly, the first factor strongly favors One Communications. *See Asahi Metal Indus. Co. v. Superior Ct. of California, Solano Cnty*, 480 U.S. 102, 114 (1987) ("The unique burdens placed upon one who must defend oneself in a foreign legal system should have significant weight in assessing the reasonableness of stretching the long arm of personal jurisdiction over national borders.").

Second, although the United States has an interest in enforcing its copyright laws, *see Capitol Recs., LLC v. VideoEgg, Inc.*, 611 F. Supp. 2d 349, 365 (S.D.N.Y. 2009) (noting that "New York has a substantial interest in protecting the intellectual property rights of copyright owners in the state"), that interest is only minimally implicated under the facts alleged here. "The acts and omissions that serve as the basis for [plaintiffs'] suit occurred in [Guyana]," as the infringing performance occurred in Guyana and was broadcast from Guyana over Facebook. *Metro. Life Ins. Co.*, 84 F.3d at 574. Plaintiffs purported injuries are also localized to Guyana, as they involve lost licensing arrangements of their work with One Communications and E-Networks, both of which are Guyanese companies. FAC ¶ 43. Moreover, "[t]he U.S. Copyright Act does not have extraterritorial application, and district courts do not have subject matter

jurisdiction over infringement occurring outside of the United States." *Levitin v. Sony Music Ent.*, 101 F. Supp. 3d 376, 384 (S.D.N.Y. 2015). Thus, the live performance of plaintiffs' song in Guyana is likely governed by Guyanese law, and application of United States copyright law is likely limited to One Communications' *worldwide* broadcast of that performance and its mere access by users in the United States. *See id*.

Third, litigation in the United States will not further plaintiffs' interests in convenient and effective relief. Ms. Hanover, who owns 75% of the copyright and is the primary copyright holder of the Song, "reside[s] in and is a citizen of Guyana." FAC ¶ 4. I fail to understand how it is more convenient for her—a non-resident of the United States—to litigate her claims in this forum rather than Guyana. Although Mr. Harry apparently resides in the United States, *id.* ¶ 48, his interest in litigating the case in New York is outweighed by Ms. Hanover's residence in Guyana. The FAC alleges only one lost opportunity to license the Song (other than from One Communications itself): namely, Ms. Hanover's "prospective business relationship" to license her music catalogue to E-Networks Inc. *Id.* ¶ 70. Notably, plaintiffs have not alleged or averred that E-Networks Inc. is located in, or has any relationship with, the United States.[12]

Fourth, the efficient administration of justice also favors One Communications. "In evaluating this factor, courts generally consider where witnesses and evidence are likely to be located." *Metro. Life Ins. Co.*, 84 F.3d at 574. One Communications has no employees located in the United States, and the infringing performance and broadcast occurred and were planned in Guyana. Stanton Decl. ¶¶ 5–6. Due to those undisputed facts, it appears that virtually all of the documents and witnesses relevant to the present case are located in Guyana.

---

[12] Plaintiffs' sole allegation regarding E-Networks' operations—that it is a "key rival" of One Communications—strongly suggests that E-Networks is a Guyanese company. FAC ¶ 70

Fifth, the shared interest of nations in furthering substantive social policies does not weigh for or against jurisdiction in the United States over Guyana.

Taken together, the due process factors indicate that exercising jurisdiction over One Communications would be unreasonable. Thus, "the exercise of jurisdiction is [not] consistent with the U.S. Constitution and laws," and I may not appropriately exercise personal jurisdiction over One Communications pursuant to Rule 4(k)(2). *George Moundreas*, 2021 WL 168930 at *11.

### III.    Failure to Serve Ms. De Freitas

Finally, I note that plaintiffs have named Ms. De Freitas as a defendant. The Federal Rules require service upon a defendant "within 90 days after a complaint is filed." Fed. R. Civ. P. 4(m). More than six months have passed since plaintiffs initiated this case, and plaintiffs have not yet filed a proof of service upon Ms. De Freitas. *See* Summons Issued, ECF No. 5. I therefore order plaintiffs to show good cause for their failure to serve Ms. De Freitas, absent which I will order dismissal of all claims against her without prejudice. Fed. R. Civ. P. 4(m); *see Meilleur v. Strong*, 682 F.3d 56, 61 (2d Cir. 2012) ("In the Rule 4(m) context, a district court abuses its discretion when . . . it dismisses a complaint *sua sponte* for lack of service without first giving notice to the plaintiff and providing an opportunity for her to show good cause for the failure to effect timely service.").

### CONCLUSION

For the reasons set forth above, plaintiffs have failed to establish a prima facie case of personal jurisdiction over One Communications.[13] Nor is jurisdictional discovery proper, as

---

[13] I note that plaintiffs make vague references to the existence of personal jurisdiction over One Communications' corporate parent, Atlantic Tele-Network International, Inc., which is headquartered and incorporated in the United States. However, a parent corporation's actions

plaintiffs have failed to make a "colorable basis for personal jurisdiction, which could be established with further development of the factual record." *Leon v. Shmukler*, 992 F. Supp. 2d 179, 195 (E.D.N.Y. 2014). Given plaintiffs' acknowledgement that One Communications is headquartered and incorporated in Guyana and has no offices, employees, or property in the United States, general jurisdiction cannot be established by proof that One Communications derives significant revenue from its business with the Guyanese community in the United States. Likewise, plaintiffs have offered no further allegations, or even arguments, that One Communications' infringing conduct relates to any contacts One Communications had with New York or the United States.

I therefore GRANT the motion to dismiss for lack of personal jurisdiction. Plaintiffs have already amended their complaint, and further amendment would be futile. *See McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007) (noting that leave to amend "shall be freely given when justice so requires," but that a district court may deny leave to amend where amendment would be futile (quoting Fed. R. Civ. P. 15(a)). I therefore deny leave to amend. However, the dismissal is without prejudice. *See Vanek v. Samsung EMS Co.*, No. 23-CV-3127, 2024 WL 4894344, at *2 (S.D.N.Y. Nov. 26, 2024) (noting that "a dismissal based on . . . lack of personal jurisdiction is a dismissal without prejudice").

---

cannot be imputed to assert jurisdiction over its subsidiaries. *See Holland America Line Inc. v. Wärtsilä North America, Inc.,* 485 F.3d 450, 459 (9th Cir. 2007) (holding that a parent corporation's contacts may not be imputed to its subsidiary).